UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



Case No. 06-61848-CIV-COHN/SELTZER

BARRY J. SPIEGEL,

    Plaintiff,

v.

BARRY SIEGEL, PHILIP B. KART,
KENNETH J. FRIEDMAN, BRUCE
S. UDELL, and PACIFIC ETHANOL, INC.,

    Defendants.

_____

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, AND STAYING CASE

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Amended Complaint [DE 25]. The Court has considered the Motion, Plaintiff's Response [DE 40], Defendants' Reply [DE 50], and the record, and is otherwise fully advised in the premises.

**I.**    **INTRODUCTION**

Plaintiff Barry J. Spiegel brings this case against Defendants Barry Siegel, Philip Kart, Kenneth Friedman, Bruce Udell, and Pacific Ethanol, for various violations of the Securities and Exchange Act of 1934 arising out of a merger between Accessity Corp. and three companies (Pacific Ethanol, Kinergy, and ReEnergy), resulting in the successor corporation, and Defendant in this matter, Pacific Ethanol ("PEIX"). Plaintiff was a shareholder and outside director of Accessity prior to the merger. He makes a number of allegations of self-dealing on the part of directors Barry Siegel and Philip Kart. He also alleges that Siegel and Kart made many misrepresentations about the

nature of the merger, which resulted in a significant dilution of the value of the former Accessity shareholders' stock. In essence, Plaintiff argues that the directors of Accessity negotiated and promoted a merger, using misrepresentations and omissions of key facts, that was not in the best interests of the former Accessity shareholders, but instead benefited the directors personally and lodged control of the newly formed corporation in the hands of the old Pacific Ethanol shareholders.

In Count I of the Complaint, Plaintiff alleges a violation of Section 14(a) of the Securities and Exchange Act of 1934. Specifically, Plaintiff alleges that Defendants made various misrepresentations, omissions, and misstatements in the Proxy Statement for the purpose of leading him to believe that he had dissenter's rights under New York law and then to waive those purported rights. In Count II of the Complaint, Plaintiff alleges a violation of Section 10(b) of the Exchange Act. Specifically, Plaintiff alleges that Defendants deceived the Plaintiff, artificially inflating the purported value of the old Pacific Ethanol company, lodging control of the new merged company, PEIX, in the former owners of Pacific Ethanol, Kinergy, and ReEnergy, and concealing the receipt of unlawful and unjustified personal compensation by Siegel and Kart. In Count III of the Complaint, Plaintiff alleges a violation of Section 20(A) of the Exchange Act against the individual Defendants, arguing that by virtue of their controlling positions in the company, they are liable for causing the violations of Sections 10(b) and 14(a), as articulated in Counts I and II.

**II.    MOTION TO DISMISS STANDARD**

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint

should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## III.   STATUTE OF LIMITATIONS

Because the issue is jurisdictional, this Court must first consider whether Plaintiff's Complaint was filed within the applicable statute of limitations for each of his claims.

### A.   *Applicable facts*

According to the allegations in Plaintiff's Amended Complaint, which this Court takes as true for purposes of this Motion, the negotiations for a potential merger between Accessity and old Pacific Ethanol, Kinergy, and ReEnergy began in March 2004. Plaintiff resigned from the board of directors in May 2004, at which time he

alleges that "he perceived that no facts justified a transaction in which each of the more than a projected 18 million shares of old Pacific Ethanol, Kinergy and ReEnergy (on a fully diluted basis) could be worth the same as each of the 2,731,747 million [sic]¹ shares (fully diluted) of Accessity." (Amended Complaint, [DE 4] ¶ 17.) The negotiations proceeded forward without him, however, and the board approved a Share Exchange Agreement on May 16, 2004 effecting the share exchange and merger and recommending it to Accessity's shareholders for approval. (Id. at ¶ 19.) The deal was presented to the shareholders for their consideration with a letter dated December 10, 2004, which enclosed a notice of the annual meeting of shareholders, the Proxy Statement challenged in this action, a proxy voting card, and the annual report on Form 10-KSB. (Id. at ¶ 22.) Plaintiff received this letter and its enclosures on December 23, 2004. (Id.) Various press releases, internet chat room postings, phone calls, and other statements were subsequently made by the Defendants in an effort to promote the approval of the merger. The Defendants consummated the merger and share exchange on March 23, 2005. (Id. at ¶ 33.) Plaintiff's original Complaint in this action was filed on December 8, 2006.

### B.   *Applicable statute of limitations*

Plaintiff argues that his claims under both Section 14(a) and Section 10(b) are governed by the two-year limitation period prescribed by Section 804(b) of the Sarbanes-Oxley Act. See 28 U.S.C. § 1658(b)(1). Defendants concede that the two-

---

¹ The Court concludes that this is simply a typo. The Amended Complaint later makes clear that Accessity had 2,339,414 shares outstanding prior to the merger, not "2,339,414 million".

4

year limitations period from the Sarbanes-Oxley Act applies to the Section 10(b) claim, but argue that the Section 14(a) claim is still governed by a one-year limitations period.

The Exchange Act provides that 'no action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e). However, in 2002, the Sarbanes-Oxley Act extended the statute of limitations to two years for certain securities claims, specifically any "private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . ." 28 U.S.C. § 1658. The key issue, therefore, is whether a claim pursuant to Section 14(a) is such an action. As Defendants argue, courts have consistently held that because fraud, deceit, and manipulation are not elements of a Section 14(a) claim, the Sarbanes-Oxley amendment does not affect its statute of limitations. See, e.g., Virginia M. Damon Trust v. N. Country Fin. Corp., 325 F. Supp. 2d 817, 824 (W.D. Mich. 2004) ("A cause of action that is based on negligence is not a claim for 'fraud, deceit, manipulation, or contrivance,' all of which are words connoting deliberate, intentional deception. Therefore, by its plain text, the amendment does not apply to claims under sections 11 and 14"); In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2003); In re Exxon Mobil Corp. Sec. Litig., 387 F. Supp. 2d 407, 424 (D.N.J. 2005) ("On its face, then, the language of Sarbanes-Oxley clearly applies to 'claims' of fraud. It does not specifically apply to claims, like those under Section 14(a), for which fraud is not an element or requisite"); In re Zoran Corp. Derivative Litig., 511 F. Supp. 2d 986, 1016-17 (N.D. Cal. 2007) ("A Section 14(a) claim is not a claim that 'sounds in fraud'

5

under the Sarbanes-Oxley Act of 2002, so its statute of limitations was not extended by 28 U.S.C. 1658(b)(2)"); In re Verisign, Inc. Derivative Litig., 2007 U.S. Dist. LEXIS 72341, *102 (N.D. Cal. 2007). This Court agrees, and applies a one-year statute of limitations to Plaintiff's Section 14(a) claim, set out in Count I of the Complaint.

The parties agree that the two-year statute of limitations from the Sarbanes-Oxley Act applies to Section 10(b) claims. The Court, therefore, will apply a two-year statute of limitations to the claims set out in Count II of the Complaint.

**C.      Timeliness of Complaint**

The Court must now determine whether Plaintiff's Complaint was filed within the requisite amount of time for each claim. The original Complaint was filed in this action on December 8, 2006. As discussed above, Plaintiff's Section 14(a) claim must have been brought within two years after discovery of the facts constituting the violation, and Plaintiff's Section 10(b) claim must have been brought within one year after such discovery. "'Discovery occurs when a potential plaintiff has inquiry or actual notice of a violation.'" Theoharous v. Fong, 256 F.3d 1219, 1228 (11th Cir. 2001) (quoting Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 670 (7th Cir. 1998)). "Inquiry notice is 'the term used for knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed.'" Id. The law is clear that Plaintiff need not have learned of the full extent of the fraud, but rather that inquiry notice "is triggered by evidence of the *possibility* of fraud, not full exposition of the scam itself." Id. Furthermore, if a plaintiff is on inquiry notice of his alleged claims, but fails to undertake any inquiry, knowledge of the alleged facts constituting the claims will be imputed to him as of the date the duty to inquire arose. LC Capital Partners v. Frontier

Ins. Group, 318 F.3d 148, 154 (2d Cir. 2003). However, a plaintiff is not deemed to have been on inquiry notice "unless and until the investor is able, with the exercise of reasonable diligence (whether or not actually exercised), to ascertain the information needed to file suit." Tello v. Dean Witter Reynolds, 410 F.3d 1275, 1284 (11th Cir. 2005).

Defendants argue that Plaintiff was on inquiry notice as of May 6, 2004, the date on which he resigned from Accessity's board of directors, allegedly in protest of the deal. Plaintiff does allege in his Complaint that as of May 6, 2004, "he perceived that no facts justified a transaction in which each of the more than a projected 18 million shares of old Pacific Ethanol, Kinergy and ReEnergy (on a fully diluted basis) could be worth the same as each of the 2,731,747 million shares (fully diluted) of Accessity." (Amended Complaint, [DE 4] at ¶ 17.) Plaintiff responds, however, that the Defendants subsequently purported to provide a justification for the one-to-one share exchange ratio, which turned out to be false, issued a false and misleading Proxy Statement on December 10, 2004, and continued to violate the securities laws by issuing false and misleading press releases through February and March of 2005. Thus, Plaintiff argues that he was not on inquiry notice of the violations at the time he resigned from the board of directors because they had not yet occurred.

The latest point at which the Plaintiff argues that he was on inquiry notice of the violations is March 23, 2005, when the transactions were consummated without shareholder approval and on terms other than those disclosed to Accessity shareholders. (Amended Complaint, ¶ 33 - 40.) Because this suit was filed more than one year after that point, applying the one-year statute of limitations for Section 14(a)

7

claims, Count I of Plaintiff's Amended Complaint must be dismissed as untimely.

A question remains, however, as to whether Plaintiff was on inquiry notice of the fraud, as set out in Count II of the Amended Complaint, prior to the issuance of the Proxy Statement on December 10, 2004. The allegations in Count II relate to the statements made by the Defendants surrounding the merger and share exchange, specifically highlighting the misrepresentations made in the Proxy Statement. Plaintiff's allegation that he perceived the unfairness of the deal and resigned from the board in May 2004, prior to the issuance of the Proxy Statement, would certainly indicate that as soon as he saw the Proxy Statement, he would have been on inquiry notice that it contained false statements. However, this Court cannot conclude that Plaintiff was on inquiry notice at any point prior to his receipt of the Proxy Statement. Put simply, the fraud on which he bases his suit was allegedly perpetrated through misstatements in the Proxy Statement, as well as subsequent concealment of key facts and ongoing misrepresentations until the merger was completed on March 23, 2005. These allegedly fraudulent acts all took place less than two years prior to the filing of this suit. Defendants argue that Plaintiff was placed on notice of the possibility of fraud back in May 2004, when he resigned from the board, but the concept of "inquiry notice" does not relate to the possibility that fraud might occur in the future. The cases cited in Defendants' briefs clearly refer to a duty to investigate "the possibility that his legal rights *had* been infringed," Theoharous, 256 F.3d at 1228 (emphasis added), not the possibility that his legal rights might be infringed at some point in the future.

In support of their position, Defendants cite to In re Merrill Lynch & Co., in which they represent that the court found that investors were put on inquiry notice of claims

8

stemming from allegedly incomplete and misleading investment research reports long before the allegedly misleading reports themselves were issued. See 279 F. Supp. 2d 351, 379 (S.D.N.Y. 2003). However, the language cited by the Defendants states only that "the alleged conflicts of interest and the dearth of sell ratings were issues widely debated in the financial markets and commentary long before the research reports challenged here were even issued," not that the investors were on inquiry notice long before the reports were issued. Id. The case goes on to clearly state that the plaintiffs brought their claims more than one year[2] after the putative class periods, within which the challenged reports were issued, ended, Id. at 381, which is distinctly different from the instant case, in which the allegedly fraudulent actions took place within the two years prior to the filing of the lawsuit.

It seems clear from the case law that a plaintiff cannot be deemed to be on inquiry notice of a fraud that has, in fact, not yet occurred. Accordingly, Counts II and III of the Amended Complaint are not time barred.

## IV.  STANDING

Defendants next argue that Plaintiff lacks standing to assert a Section 10(b) claim because he is not a purchaser or seller of stock. Because this issue is also jurisdictional, it too must be considered before the Court turns to the merits of the action.

Section 10(b) makes it unlawful for any person "to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or

---

[2] The applicable statute of limitations applied in that case was one year. Merrill Lynch, 279 F. Supp. 2d at 378.

any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). Plaintiff contends that he is a purchaser of stock for the purposes of Section 10(b) because he acquired shares of the new company, PEIX, in the share exchange.

The law is clear that where two corporations merge, the shareholders of the merged corporation are "purchasers" of shares in the new corporation by virtue of the share exchange. See SEC v. Nat'l Sec., Inc., 393 U.S. 453, 467 (1969). This law has been applied by the former Fifth Circuit in case law that is binding on this Court. See Smallwood v. Pearl Brewing Co., 489 F.2d 579, 590 (5th Cir. 1974).      In Smallwood, the plaintiff was a shareholder of Pearl Brewing Company. Pearl entered into a merger agreement with Southdown, Inc., pursuant to which Pearl would be merged into Southdown, and for each share of Pearl common stock owned, a shareholder would receive one share of Southdown stock. Id. at 585. On the date the merger was consummated, all shares of Pearl were converted into shares of Southdown. Id. at 591. The court concluded that Smallwood and the other class members "effectively 'sold' their shares of Pearl and 'purchased' shares of Southdown on that day," and, thus, had standing to assert violations of Rule 10b-5 in the merger transaction. Id.

The instant case presents a direct parallel to the facts of Smallwood. Plaintiff Spiegel was a shareholder of Accessity, and pursuant to a merger agreement with Pacific Ethanol, Accessity merged into Pacific Ethanol. For each share of Accessity stock owned, the shareholders received one share of the newly merged Pacific Ethanol

10

(PEIX). Thus, like the plaintiff in Smallwood, Plaintiff Spiegel effectively sold his shares of Accessity and purchased shares of PEIX, and thus, has standing to assert his Section 10(b) claim.

Defendants argue that Plaintiff actually retained his shares in Accessity, and that the company was merely renamed. This argument is premised on the fact that the holders of Accessity common stock were not required to exchange their stock certificates for new stock certificates of the surviving corporation, PEIX. (Defendants' Reply, [DE 50] p. 7.) Whether or not the actual certificates were exchanged is immaterial, however. The Smallwood court stated in a footnote that "it is not clear whether Smallwood has exchanged his Pearl certificates for Southdown ones. In any event, all Pearl shares have in actuality been converted into Southdown shares . . . [T]he shares of Pearl stock held by Smallwood and other members of his class have been 'exchanged,' regardless of the status of the certificates." 489 F.2d at 591 n.11. Thus, the Smallwood court clearly contemplated the precise issue raised by the Defendants in the instant case, and concluded that it did not affect the analysis. This Court agrees, and concludes that regardless of whether or not Plaintiff Spiegel physically exchanged his certificates, he did in fact exchange his shares of Accessity for shares of PEIX, and is, thus, a "purchaser or seller" with standing to sue under Section 10(b).

V.   **ISSUE OF APPRAISAL RIGHTS**

Having concluded that the Court has jurisdiction over the remaining claims in the Complaint, the Court now turns to the substance of those claims. Plaintiff represents that his Section 10(b) claim, like his Section 14(a) claim, is based on the grounds that

11

the false and misleading statements in the Proxy Statement induced Plaintiff Spiegal not to assert appraisal rights, the assertion of which is mandatory under New York law. See Wilson v. Great Am. Indus., Inc., 979 F.2d 924, 930-33 (2d Cir. 1992). The Proxy Statement at issue in this case declared that Accessity shareholders had rights under New York law to dissent from the transaction and to demand appraisal of, and receive payment for, their shares of common stock. Mr. Spiegel did not exercise any such appraisal rights. To make out a claim under the legal theory articulated in Wilson, a plaintiff must show that he has lost his right to a state appraisal because of a materially deceptive proxy. 979 F.2d at 931. A plaintiff must also show both a causal nexus between the misrepresentations and his injury (loss causation) and a causal nexus between the misrepresentations and his decision to engage in the subject transaction (transaction causation). Id.

Plaintiff's case in this Court, therefore, depends entirely upon the legal premise that he had appraisal rights as a result of the merger transaction at issue. Plaintiff has taken the position in his pending state court action that he never had such appraisal rights. Defendant, on the other hand, contends that he did have those appraisal rights, and failed to exercise them (thus precluding relief in state court), but was not defrauded into doing so by the proxy statement (thus precluding relief in this Court).

Finding Plaintiff's claims in state court and his claims here to be mutually exclusive, and noting that the state court action appears to now be proceeding forward, this Court concludes that the most appropriate course of action at this juncture is to revisit its previous ruling on Plaintiff's Motion to Stay. Changed circumstances and a fuller exposition of the legal issues in play have convinced this Court that, upon a

12

consideration of all the factors, this action should be stayed pending resolution of the state court action before Judge Carney. Piecemeal litigation in this matter, it now appears, would be abnormally excessive or deleterious, because it could result in this Court and the state court reaching differing conclusions, causing an inequitable result; either Plaintiff Spiegel could, hypothetically, recover twice, or not at all, depending on the resolution of the same issue in the two different fora. Furthermore, in light of the fact that Judge Carney is now proceeding on Plaintiff's Amended Complaint, it can now be said that the case before him has proceeded significantly further than the case pending before this Court, and that he is in a better position to resolve the complex issues raised. Finally, if Judge Carney concludes that Plaintiff Spiegel never had appraisal rights, as he may already have done,[3] then the state court proceeding would be adequate to protect his rights, and the case before this Court would be entirely inadequate and unnecessary.

Based on a careful balancing of the Colorado River factors,[4] this Court concludes that these factors, taken individually and together, now weigh strongly in favor of abstention. Therefore, this Court vacates its prior ruling on Plaintiff's Motion to Stay, and stays this case pending completion of the case currently pending before Judge

---

[3] In his Order denying Defendants' Motion to Dismiss Amended Complaint, attached as Exhibit A to Plaintiff's Response [DE 40], Judge Carney denies the Motion but does not articulate precisely the grounds on which he does so. However, from the fact that the appraisal rights issue was discussed at the hearing, and is integral to the claims before him, this Court reasons that Judge Carney may have concluded that Plaintiff never had appraisal rights and allowed the claims to proceed based on that conclusion.

[4] The Court considers the factors as set out by the Eleventh Circuit in Ambrosia Coal and Const. Co. v. Morales, 368 F.3d 1320, 1331 (11th Cir. 2004).

Carney in state court.

## VI. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint [DE 25] is **GRANTED in part and DENIED in part**.

    a) Defendants' Motion is **GRANTED** as to Count I of the Amended Complaint. This Count is **DISMISSED** as untimely filed.

    b) Defendants' Motion is **DENIED** as to the jurisdictional challenges raised against Counts II and III (statute of limitations and standing).

    c) Defendants' Motion is **TAKEN UNDER ADVISEMENT** as to the substantive challenges raised against Counts II and III, to be considered and ruled upon at such time as this case is re-opened.

2. This action is hereby **STAYED** pending the resolution of the case currently before Judge Robert Carney in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (Case No. 05-18512).

3. Plaintiff Barry Spiegel is directed to file a Status Report at the earliest of 1) the resolution of the state court action, or 2) three (3) months from the date of this Order, advising the Court as to the status of that action.

4. Upon resolution of the state court action, Plaintiff Spiegel is directed to file either a voluntary dismissal of this action or a motion to re-open and proceed with this action.

5. This case is **CLOSED** for administrative purposes, pending the resolution

of the state court claim.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 15th day of January, 2008.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record